AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

FILED
At Albuquerque NM

for the

District of New Mexico

SEP 6 2018

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. 18-MR-849 |
| TThe property to be searched is a Samsung, Model: | ) | |
| SGH-I337Z UD currently in the custody of the Bureau | ) | |
| of Alcohol, Tobacco, Firearms and Explosives | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of _____New Mexico_____ *(identify the person or describe property to be searched and give its location)*:   See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:   See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___2119___ , and the application is based on these facts:   See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Samuel Supnick, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9-6-18

_____
*Judge's signature*

City and state:  Albuquerque, NM

Kirtan Khalsa U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SAMSUNG, MODEL: SGH-I337Z UD, FCC ID: A3LSGHI337, IMEI: 358010051502299, LOCATED AT THE ALBUQUERQUE ATF FIELD OFFICE. | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Samuel Supnick, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device— which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).  I have been employed with ATF since January of 2017.  I am an investigative, or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), in that I am an officer of the United States who is empowered by law to conduct investigations and make arrests for the offenses enumerated in Title 18 and 26, United States Code.

3.      Through the ATF, I attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center, as well as the Special Agent Basic Training Program at the ATF National Academy. During these programs, I received instruction in and practiced the

investigation of violations of federal firearms, explosives, and arson statutes. Prior to employment with ATF, I served for three and a half years as a local police officer.  My training and experience has involved, among other things: (1) the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the purchase, possession, distribution, and transportation of firearms and of the laundering and concealment of proceeds of firearms and drug trafficking; (2) surveillance; (3) analysis and processing of documentary, electronic, and physical evidence; (4) the legal and illegal purchase of firearms; (5) the execution of arrest and search warrants seeking firearms and narcotics (6) and firearms trafficking.

4.      The statements contained in this affidavit are based, in part, on information provided by Special Agents and/or Task Force Officers of the ATF and other law enforcement officers, and on my background and experience as a Special Agent of the ATF.

5.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.      The property to be searched is Samsung, Model: SGH-I337Z UD, FCC ID: A3LSGHI337, IMEI: 358010051502299, hereinafter referred to as the "DEVICE." The DEVICE is currently in the custody of the ATF Albuquerque Field Office, and is stored at their office.

7.      The applied-for warrant would authorize the forensic examination of the DEVICE to include the network carrier SIM card, for the purpose of identifying electronically stored data particularly described in Attachment B.

2

8.      As detailed below, your Affiant submits that, on August 14, 2018, three or more

subjects committed carjacking contrary to 18 U.S.C. § 2119, and using, carrying, and

discharging a firearm during and in relation to a crime of violence, and possessing and

brandishing a firearm in furtherance of such crime, contrary to 18 U.S.C. § 924(c).

## PROBABLE CAUSE

9.      On August 22, 2018, your Affiant reviewed Albuquerque Police Department

(APD) reports and documents pertaining to a home invasion robbery and carjacking that

occurred on August 14, 2018. Your Affiant learned that on August 14, 2018, three male subjects

forced their way into an occupied residence, located at 6437 Dennison Road SW, Albuquerque,

New Mexico. The subjects pointed firearms at several of the residence's occupants and took

various possessions, to include keys to the residence and the occupants' vehicle. It is believed

that the subjects discharged a firearm in the area of the residence, as expended 9mm shell casings

and apparent projectile damage were later located by APD. The subjects left in one of the

occupant's vehicles, a 2010 white Ford Fusion. One of the residence's occupants observed an

additional vehicle, later identified as a blue 2001 Chevrolet Impala, outside of the residence. This

vehicle was occupied by an additional subject and left with the white Ford Fusion. APD officers

located the Chevrolet Impala abandoned at the intersection of Churchill Road SW and Bataan

Drive SW.

10.     A law enforcement helicopter located the white Ford Fusion traveling northbound

in the area of Coors Boulevard and Central Avenue. The vehicle was observed stopping in the

area of 64th Street NW and Avalon Road NW. Four subjects, three males and one female, exited

the vehicle. An APD officer approached three of the subjects, two males and a female. The two

3

males ran south, while the female began to knock on the door of an apartment. The female was detained by the officer and identified as Cynthia GALINDO-DE LA CRUZ. After being detained, GALINDO-DE LA CRUZ informed the officer that she was in possession of a firearm, and that a male suspect had forced her to hold the gun. A loaded .45 ACP caliber firearm was recovered from GALINDO-DE LA CRUZ. A search of GALINDO-DE LA CRUZ's purse yielded three cell phones, to include the DEVICE, marijuana, and property apparently taken from 6437 Dennison Road SW. No other subjects were apprehended by law enforcement.

11.     GALINDO-DE LA CRUZ was provided with medical treatment for heat exhaustion and then transported to the APD Main Station. There, she was interviewed by APD detectives. GALINDO-DE LA CRUZ was advised of her rights per Miranda, and she agreed to speak with the detectives. GALINDO-DE LA CRUZ stated that she was walking to her aunt's residence on 63rd Street when she was approached by four masked-up males. GALINDO-DE LA CRUZ stated that the males threatened to kill her with a firearm if she did not help them. GALINDO-DE LA CRUZ stated that the males asked if she knew of a place where they could take some stuff. GALINDO-DE LA CRUZ stated that they could go to her aunt's residence. GALINDO-DE LA CRUZ entered the vehicle and began to direct the males there. GALINDO-DE LA CRUZ stated that the males noticed that they were being pursued by law enforcement, so they exited the vehicle and scattered. GALINDO-DE LA CRUZ stated that she stayed in front of her aunt's door until she willingly walked up to the officer. GALINDO-DE LA CRUZ stated that she had not used any illegal substances for three months; however, earlier in the interview she stated that she had been sober for three years. GALINDO-DE LA CRUZ stated that she believed the white car driven by the subjects was a Toyota Camry, while a faded silver Chevy Impala was with it. GALINDO-DE LA CRUZ stated that the vehicles had stopped near her and two males

4

exited the silver car and entered the white car. GALINDO-DE LA CRUZ stated that the males

had initially offered her money to take them somewhere. GALINDO-DE LA CRUZ stated that

she knew it was wrong and that the police were after them. GALINDO-DE LA CRUZ stated that

she had refused to carry the firearm for them, and that they then forced her to carry it.

GALINDO-DE LA CRUZ stated that once the males noticed that the police helicopter was

following them, they parked two streets before her aunt's house and said that they would follow

her. GALINDO-DE LA CRUZ stated that she then began to walk there, after which she was

detained by APD officers. GALINDO-DE LA CRUZ denied knowing any of the males in the

vehicle.

12.     GALINDO-DE LA CRUZ provided her cell phone number to the interviewing

detective and stated that it was associated with a Cricket phone. The interviewing detective

observed that the DEVICE had a Cricket logo on it. The detective did observe that the number

provided by GALINDO-DE LA CRUZ was associated with a different recovered cellphone. The

detective observed that both the DEVICE and a Motorola-brand cellphone have a picture of

GALINDO-DE LA CRUZ and a male as their background image. Your Affiant was informed

that the DEVICE was placed into airplane mode to preserve possible evidence on it.

13.     Your affiant contacted a Ford dealership and was informed by an employee that

the white 2010 Ford Fusion taken from 6437 Dennison Road SW was manufactured in Mexico.

The vehicle was located in the state of New Mexico, and therefore traveled in interstate

commerce.

14.     It is known to your Affiant that individuals involved in criminal activities, such as

carjacking and the illegal use of firearms, utilize devices such as the DEVICE to communicate

5

before, during, and after the commission of crimes. These communications can be recorded or stored by various applications, as well as the in the device's call logs, text messages, email messages, chats, multimedia messages, or other electronic communications media. Identifying information, such as contact information or photographs of the individuals communicating, can also be stored on the device in a similar manner. The DEVICE's capabilities, to include GPS and internet access, may also have been used to assist in the planning or execution of the crimes under investigation.

15.     It is your Affiant's knowledge that the capabilities of the DEVICE may be utilized to send, receive, or store information, such as pictures or GPS locations. This information may assist law enforcement in identifying the as of yet unidentified subjects in this investigation. Additionally, this information may assist law enforcement in identifying the subjects who possessed or provided firearms for use in a crime of violence. It is your Affiant's knowledge that individuals in possession of firearms may take or send pictures or videos of or with the firearms using electronic devices such as the DEVICE.

16.     Potentially exculpatory information may be contained on the device. This information could assist law enforcement in confirming or dispelling GALINDO-DE LA CRUZ's statement to APD detectives, as well as determining her involvement in the crimes under investigation. This information may include, but is not limited to include pictures, call logs, messages, GPS locations, calendar entries, audio files, and internet or browser history.

## TECHNICAL TERMS

17.    Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b.    Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by

7

connecting the removable storage medium to a separate reader.  Removable

storage media include various types of flash memory cards or miniature hard

drives.  Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to

photographs or videos.

c. Portable media player:  A portable media player (or "MP3 Player" or iPod) is a

handheld digital storage device designed primarily to store and play audio, video,

or photographic files.  However, a portable media player can also store other

digital data.  Some portable media players can use removable storage media.

Removable storage media includes SIM cards, flash memory cards, or miniature

hard drives.  This removable storage media can also store any digital data.

Depending on the model, a portable media player may have the ability to store

very large amounts of electronic data and may offer additional features such as a

calendar, contact list, clock, or games.

d. GPS:  A GPS navigation device uses the Global Positioning System to display its

current location.  It often contains records of the locations where it has been.

Some GPS navigation devices can give a user driving or walking directions to

another location.  These devices can contain records of the addresses or locations

involved in such navigation.  The Global Positioning System (generally

abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each

satellite contains an extremely accurate clock.  Each satellite repeatedly transmits

by radio a mathematical representation of the current time, combined with a

8

special sequence of numbers.  These signals are sent by radio, using specifications

that are publicly available.  A GPS antenna on Earth can receive those signals.

When a GPS antenna receives signals from at least four satellites, a computer

connected to that antenna can mathematically calculate the antenna's latitude,

longitude, and sometimes altitude with a high level of precision.

e.     PDA:  A personal digital assistant, or PDA, is a handheld electronic device used

for storing data (such as names, addresses, appointments or notes) and utilizing

computer programs.  Some PDAs also function as wireless communication

devices and are used to access the Internet and send and receive e-mail.  PDAs

usually include a memory card or other removable storage media for storing data

and a keyboard and/or touch screen for entering data.  Removable storage media

include various types of flash memory cards or miniature hard drives.  This

removable storage media can store any digital data.  Most PDAs run computer

software, giving them many of the same capabilities as personal computers.  For

example, PDA users can work with word-processing documents, spreadsheets,

and presentations.  PDAs may also include global positioning system ("GPS")

technology for determining the location of the device.

f.     Internet: The Internet is a global network of computers and other electronic

devices that communicate with each other.  Due to the structure of the Internet,

connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same

state.

9

18.     Based on my training and experience, I know that the DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device along with evidence of criminal activities.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

20.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

10

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

11

## CONCLUSION

22.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICE described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Samuel Supnick
Special Agent
ATF

Subscribed and sworn to before me
on September 6, 2018:

UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

The property to be searched is Samsung, Model: SGH-I337Z UD, FCC ID:

A3LSGHI337, IMEI: 358010051502299 (see below pictures), hereinafter referred to as the

"DEVICE." The DEVICE is currently in the custody of the ATF Albuquerque Field Office, and

is stored at their office. This warrant authorizes the forensic examination of the DEVICE for the

purpose of identifying the electronically stored information described in Attachment B.





## ATTACHMENT B

1.      All records on the DEVICE described in Attachment A that relate to violations of

Title 18 U.S.C. 2119 (Carjacking) and Title 18 U.S.C. 924(c) (using, carrying, and discharging a

firearm during and in relation to a crime of violence, and possessing and brandishing a firearm in

furtherance of such crime) including:

      a.  Information related to any firearm used during the course of the crimes listed

above, including the identities of who owned, possessed, and used the firearms

during the course of the crimes;

      b.  Information related to the firearm possessed by GALINDO-DE LA CRUZ

      c.  Any communication with or among co-conspirators related to the crimes listed

above;

      d.  Any information relating to the planned distribution or planned use of the

proceeds of the crimes listed above;

      e.  Any subscriber information or contact information to include, names, addresses,

telephone numbers, email addresses or other identifiers;

      f.  Any call log information, including missed, incoming and outgoing calls and any

information associated with those numbers between August 12, and August 15,

2018;

      g.  Any photographs, video and audio files related to the crimes listed above;

h.  Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications related to the crimes listed above;

i.  Any documents, spreadsheets, calendar, note, password, dictionary or database entries related to the crimes listed above;

j.  Any Global Positioning Satellite (GPS) entries, Internet Protocol Connections, Location entries to include ~~Cell Tower and~~ WiFi ~~entries~~ *entries* depicting where the phone was located between August 12, and August 15, 2018;

*SS 9/6/18*

*KK*

k.  Any internet or browser entries or history;

l.  Any system data or configuration information contained within the device

2.      Any other user or system files and data, contained on the cellular device itself or an attached peripheral device such as a sim card or micro SD card, which would constitute evidence of violations of Title 18 U.S.C. 2119 (Carjacking) and Title 18 U.S.C. 924(c) (using, carrying, and discharging a firearm during and in relation to a crime of violence, and possessing and brandishing a firearm in furtherance of such crime).

3.      Evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

2

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3